# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Shawn F. Anderson, #210811, ) | Civil Action No. 9:09-0402-TLW-BM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| South Carolina Department of ) | |
| Corrections and Doctor Glen Alewine, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

This action was filed by the Plaintiff, pro se, pursuant to the Americans With Disabilities Act (ADA) and/or 42 U.S.C. § 1983. Plaintiff is an inmate with the South Carolina Department of Corrections.

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P. on July 15, 2009. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on July 20, 2009, advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted, thereby ending his case. However, notwithstanding the specific instructions and warning as set forth in the Court's Roseboro Order, Plaintiff has failed to file any response to the Defendants' motion, which is now

1



before the Court for disposition.[1]

**Background and Evidence**

Plaintiff alleges in his verified complaint[2] that on April 14, 2008 he left the Leiber Correctional Institution (where he was housed), to go to a medical appointment at the Kirkland Correctional Institution Orthopedic Clinic. Plaintiff alleges that he has been diagnosed with diabetic neuropathy, and has constant pain in his feet as well as skin deterioration on his feet. Plaintiff alleges that, while at the KCI Orthopedic Clinic, he asked the orthopedic doctor for an appointment with the pediatrist, but was informed that his request was unnecessary and that he (the KCI doctor) "could handle/deal with any and all problems related to the Plaintiff's feet."

Plaintiff alleges that, at the conclusion of his examination, the orthopedist prescribed orthopedic and/or athletic shoes. Plaintiff further alleges that his prescription noted that his shoes were "completely worn out", and that he needed orthopedic shoes which were to be replaced every six months. However, Plaintiff alleges that the Defendant Alewine (a SCDC physician) has a "custom and usage of disregarding the benefit and service that is granted . . . under SCDC policy via excessive delaying and denying and interfering with inmate prescribed treatment." Plaintiff also alleges "upon information and belief" that African American inmates do not get the same quality

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion for summary judgment. As this is a dispositive motions, this Report and Recommendation is entered for review by the Court.

[2]In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has filed a verified Complaint. Therefore, even though Plaintiff did not file a response to the motion for summary judgment,the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.



of care as white inmates.

Plaintiff alleges that, as a result of Dr. Alewine's interference, his orthopedic physician's prescription was not honored, leaving Plaintiff to walk with constant pain, and that he is also at serious risk of complications due to his condition, including possible amputation of his feet. Plaintiff seeks monetary damages, as well as certain injunctive and/or declaratory relief. See generally, Verified Complaint, with attached Exhibits (Inmate Grievance Forms).

In support of summary judgment in the case, the Defendants have submitted an affidavit from Dr. Robert Babb, who attests that he is a medical doctor at the Lieber Correctional Institution. Babb attests that he has been involved in Plaintiff's care and treatment since he began working at Lieber in the fall of 2006. Babb attests that he first saw the Plaintiff on October 4, 2006, when Plaintiff informed him that he [Plaintiff] was supposed to see the orthopedist and wanted orthopedic shoes. Babb attests that he then requested orthopedic shoes for the Plaintiff as he was not familiar with SCDC protocol. However, he was subsequently made aware that there was an SCDC policy outlining the circumstances under which soft shoes can be medically prescribed for or issued to an SCDC inmate, such as where objective medical data reveals one of the following diagnosis: acute fractures of the ankle or foot; structural foot deformities; boney exostosis of the toes or feet; or the presence of a skin breakdown, infection or significant swelling. See also Defendants' Exhibit B.[3] Babb attests that it was clear that Plaintiff did not meet this criteria, and, therefore, although he could always purchase shoes on his own, he did not have a medical need for soft shoes.

Babb further attests that on October 26, 2006, a pair of arch support shoe insoles was ordered for the Plaintiff in an attempt to soften his shoes and reduce the likelihood of any ulcers

---

[3] Located in the record on the last page of the attachments to Alewine's Affidavit.



forming. Babb attests that this was appropriate care at that time, and that Plaintiff received the insoles on November 7, 2006. Babb attests that he thereafter saw the Plaintiff on December 4, 2006, at which time Plaintiff made no complaints of foot problems.

Babb attests that on May 7, 2007, Plaintiff was seen by Nurse Practitioner Jones complaining of pain and difficulty walking due to improper footwear and diabetic neuropathy. Plaintiff asked to be seen by the orthopedic clinic and requested orthopedic footwear from Capital Prosthetics, but since he had recently refused an orthopedic consult, it was suggested that he use elective outside health care. Babb attests that notations from the diabetic clinic during this time reflected that Plaintiff's feet were in good health.

Babb attests that on August 29, 2008, another pair of arch support shoe insoles was ordered for the Plaintiff, which was an accommodation for him. Plaintiff was thereafter seen on August 31, 2007 by Nurse Practitioner Jones complaining of wrist pain and stiffness. No foot problems were noted. Babb attests that Plaintiff was also referred to be seen by HealthSouth on September 25, 2007, for problems with his thumb. Plaintiff was diagnosed with possible DeQuervain's Syndrome, which is tendinitis in the thumb, and received a recommendation for a non-steroid anti-inflammatory drug, a steroid injection, and a thumb splint. Babb attests that he thereafter discussed this diagnosis with the Plaintiff on October 8, 2007, noted that Plaintiff had already been prescribed a non-steroid anti-inflammatory drug, and referred Plaintiff to the orthopedic clinic for DeQuervain's Syndrome. Plaintiff was thereafter seen in the orthopedic clinic by Dr. Koon on November 19, 2007, where he refused a steroid injection but was given a thumb splint.

Babb attests that on January 7, 2008, Plaintiff complained to him about foot pain and claimed that his shoes did not help. Babb attests that he attempted to refer Plaintiff to the podiatry

4



clinic. Babb attests that, based on Plaintiff complaints and symptoms, this was not a medical issue, but that he was simply trying to accommodate him. The referral was denied on January 10, 2008 because there was no objective finding to authorize a referral. Babb attests that the records from the diabetic clinic continue to state that Plaintiff's feet were in good health.

Babb attests that Plaintiff presented to sick call on March 1, 2008, and then came to see him on March 17, 2008, complaining about the refusal of special shoes for him, and stating that he had foot pain, although he had no sores or injuries on his feet. Plaintiff again presented to Dr. Babb on April 3, 2008, requesting special shoes for the pain in his feet, but he again had no symptoms. Plaintiff was thereafter seen by Dr. Koon in the orthopedic clinic on April 14, 2008 with respect to his diagnosis of DeQuervain's Syndrome. Babb attests that during this appointment Plaintiff apparently complained to Dr. Koon that he had diabetic neuropathy and that his shoes were completely worn out, and that in response to his complaints the orthopedic clinic recommended athletic shoes or diabetic shoes for him. Based on this report, Dr. Babb attests that he drafted another referral request for the Plaintiff to be seen by Capital Prosthetics. This request was again denied on April 22, 2008 since the Plaintiff did not have any symptoms to warrant a consult; however, on April 15, 2008 another pair of shoe insoles were ordered.

Babb attests that on May 1, 2008, Plaintiff presented to sick call complaining of dark spots on both feet, with no open sores or drainage. Babb attests that this was likely due to his diabetic neuropathy, but that there was no indication of a problem caused by shoes, or any symptoms for a referral. Further, after Plaintiff received his insoles he made no other complaints of foot problems until December 31, 2008, over six months later. Babb attests that when he met with the Plaintiff on December 31, 2008, he informed Plaintiff he could not refer him to a pediatrist unless there was a valid reason such as a deformity or foot ulcer. He recommended that Plaintiff purchase

5



new shoes from the commissary. Babb attests that Plaintiff thereafter filed his complaint in federal court on or about February 18, 2009.

Babb attests that diabetic neuropathy is a condition secondary to diabetes where the circulation in the feet and legs is very low, causing chronic pain and numbness in the feet and lower legs. Babb attests that pain in feet is common among diabetic individuals. Babb further attests that when inmates are seen in the diabetic clinic they are instructed regarding good foot care and asked about the condition of their feet to determine if they have any open sores or ulcers on their feet. Babb attests that, according to Plaintiff's medical record, he reported to the diabetic clinic that his feet were in good health with no skin breakdown from January 2007 through February 2009, and attests that, because Plaintiff only complained of foot pain and at no time complained of ulcers or open sores or wounds on his feet or lower legs, he was not eligible to be issue or prescribed soft shoes according to SCDC policy, although all inmates are able to purchase athletic shoes through the commissary at any time. In conclusion, Babb attest that Plaintiff has at all times been treated in accordance with generally accepted medical practices, and that he has received appropriate care for his objective symptoms and complaints. See generally, Babb Affidavit.

The Defendant Glen Alewine has also submitted an affidavit wherein he attests that he is a medical doctor employed by the Department of Corrections. Alewine attests that he was the Medical Director for the Department from 2001 through 2008, and that he is currently a staff physician. Alewine has attached Plaintiff's recent medical records to his affidavit as exhibit A, and attests that based upon his review of these records, Plaintiff was at all times treated appropriately and within the standard of care by medical staff. Alewine attests that under SCDC policy soft shoes may only be prescribed to an inmate when there is objective data to support a diagnosis that they are needed. See also, Defendant's Exhibit B (policy). However, even when soft shoes are not



medically necessary, an inmate can purchase athletic shoes through the commissary.

Alewine attests that Plaintiff did receive new high top shoes in October 2004, when it was determined he needed these for support. Plaintiff was later seen by Dr. Walsh in the orthopedic clinic on January 23, 2006 for complaints of elbow and knee pain, at which time Plaintiff also complained about his shoes. Walsh recommended that Plaintiff receive new athletic shoes based on his complaints, but Alewine attests that Plaintiff did not have objective symptoms to match such a request, with foot problems not even being the reason Plaintiff was sent to the orthopedic clinic. Alewine attests that inmates often try to get one outside doctor to make recommendations not related to their visit, which the Department of Corrections cannot grant without objective findings. Alewine further attests that Plaintiff was approved and scheduled for an appointment with the orthopedic clinic in April 2006, but that Plaintiff refused to be seen or treated by the orthopedic clinic at that time.

Alewine attests that between April and November 2006, Plaintiff complained on multiple occasions that he had not received his new shoes, but that there were never any objective symptoms to justify Plaintiff's request. Alewine attests that, during this time, Plaintiff did not complain of foot pain, skin breakdown, infection, or swelling. In October 2006, Dr. Babb submitted a medical request stating that Plaintiff was requesting orthopedic shoes, and Alewine attests that he responded to this request by instructing Dr. Babb to determine if Plaintiff should be prescribed special footwear according to SCDC policy. Alewine attests that under the SCDC policy on soft shoes, a visit with the orthopedic clinic is not necessary to determine if the requisite objective data exists, and that according to the records, there were no objective symptoms to indicate a need for an orthopedic referral.

Alewine attests that in November 2006, Dr. Babb submitted another medical request



stating that Plaintiff was complaining of foot pain and requesting new shoe insoles. Alewine attests that he responded by explaining that there was not a podiatry clinic available, but that the insoles could be obtained through medical without approval. Alewine attests that Plaintiff thereafter received a new pair of arch support inserts for his shoes on November 7, 2006.

In May 2007, Nurse Practitioner Jones submitted a medical request stating that Plaintiff was having pain and difficulty walking due to "improper footwear" and an injured knee, and that Plaintiff wanted a consult with the orthopedic clinic as well as special footwear from Capitol Prosthetics. Alewine attests that he denied this request because there was no objective medical need submitted for these shoes. Alewine attests that special shoes are only prescribed for specific ailments as specified by policy, otherwise they are an elective treatment. On January 7, 2008 Dr. Babb submitted a medical request stating that Plaintiff claimed that the prison issued shoes caused foot pain, but there were again no objective symptoms to allow a referral. However, in February 2008, a medical request was submitted for a follow up appointment with the orthopedic clinic for Plaintiff's diagnosis of DeQuervain's Syndrome, and Alewine approved that request.

Alewine attests that on April 14, 2008, he received a recommendation from Dr. Koon that Plaintiff receive athletic shoes or diabetic shoes based on Plaintiff's apparent complaint to Dr. Koon about his shoes during a visit to Dr. Koon relating to Plaintiff's DeQuervain's Syndrome. Alewine attests that, based on this recommendation, Dr. Babb ordered a pair of arch support shoe insoles for the Plaintiff. Alewine attest that Dr. Babb also made a request for Plaintiff to be seen by a podiatrist, to see Capital Prosthetics, and to receive new shoes, but that he denied this request as Dr. Koon did not state that Plaintiff was suffering from any complications of the skin on his feet, and there was no objective medical reason for the shoes pursuant to SCDC policy. Alewine attests that Plaintiff's medical records reflect that he has not suffered from any chronic skin break down or any

8



diagnosis that would justify a prescription for soft shoes.

Alewine further attests that the diabetic clinic treats diabetic inmates and educates them on issues including keeping their feet and legs healthy, and when inmates are seen in the diabetic clinic they are asked about the condition of their feet to determine if they have any open sores or ulcers. Alewine attests that Plaintiff's medical records reflect that he reported to the diabetic clinic that his feet were in good health with no skin breakdown from January 2007 to February 2009. Alewine further attests that Plaintiff is able to purchase athletic shoes from the commissary, and that the medical department has routinely provided him with insoles for his shoes to assist with comfort due to his condition of "flat feet". However, soft or special shoes are not prescribed for the condition of "flat feet".

Alewine attests that Plaintiff has recieved appropriate medical treatment, and has at all times been treated in accordance with generally accepted medical practices. Further, he was at no time aware of Plaintiff's race, as the race of an inmate is not included in the form provided to him requesting a consult. Alewine attests that SCDC policy regarding special or soft shoes applies equally to all inmates regardless of race or special circumstances. See generally, Alewine Affidavit, with attached Exhibits.

As previously noted, Plaintiff has presented no exhibits or other evidence, or even a response, in opposition to the Defendants' motion for summary judgment.

**Discussion**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the



pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P. Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

## I.

## (§ 1983 Medical Claim)[4]

To the extent Plaintiff is asserting a medical claim for violation of his constitutional rights, in order to proceed with such a claim and survive Defendants' motion for summary judgment,

---

[4] Defendants argue, inter alia, that Plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit. See generally, Affidavit of Vera Jenkins, with attached Exhibits. However, although Defendants contend that Plaintiff did not timely file his Step I Grievance, it is undisputed that he filed both a Step I Grievance and, after denial of that grievance, a Step II Grievance, to which he received a response. Plaintiff was not required to appeal the decision denying the Step II Grievance to the Administrative Law Court in order to exhaust his administrative remedies. See Johnson v. Ozmint, 567 F.Supp. 2d 806, 820, n.5 (D.S.C. 2008); Duncan v. Langestein, No. 07-268, 2008 WL 153975 at * 5 (D.S.C. Jan. 14, 2008) (citing Charles v. Ozmint, No. 05-2187, 2006 WL 1341267 at * 4 n. 4 (D.S.C. May 15, 2006) (recognizing that completion of Step 2 grievance exhausts administrative remedies and § 1997(a) does not require inmates to further appeal to Administrative Law Court.)); Ayre v. Currie, No. 05-3410, 2007 WL 3232177 at * 7 n.5 (D.S.C. Oct. 31, 2007). Further, Plaintiff indicates in his verified complaint that he received final denials of his grievance prior to filing this lawsuit. See Verified Complaint, Section II; see also Exhibits to Plaintiff's Complaint [Grievance Forms], which include Plaintiff's Step II Grievance denying his grievance and advising him that he could appeal to the Administrative Law Court. Based on this evidence, the undersigned has considered Plaintiff's claims on the merits. See Anderson v. XYZ Correctional Health Services, Inc., 407 F.3d 674, 683 (4th Cir. 2005) [inmate's failure to exhaust administrative remedies is an affirmative defense to be both pled and proven by the Defendant]; Jones v. Bock, 127 S.Ct. 910 (2007).

10



Plaintiff must present evidence sufficient to create a genuine issue of fact as to whether the Defendant Alewine was deliberately indifferent to his serious medical needs.[5] Estelle v. Gamble, 429 U.S. 97, 106 (1976); Farmer v. Brennen, 511 U.S. 825, 837 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986); Wester v. Jones, 554 F.2d 1285 (4th Cir. 1977); Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975); Belcher v. Oliver, 898 F.2d 32 (4th Cir. 1990). However, the evidence before this Court includes voluminous medical records showing that Plaintiff has received continuous and ongoing treatment for his complaints and medical condition; has been provided with medications, counseling and instructions on how to deal with his diabetes; as well as other general medical care. The Defendants have also provided affidavits from two medical professionals who have either provided direct care to the Plaintiff and/or reviewed his overall medical records, and who attest that Plaintiff has been afforded continuing and adequate care for his medical complaints. Conversely, Plaintiff has failed to present any evidence in support of his claims or to survive summary judgment, leaving the Court with only the general and conclusory allegations of his verified complaint to consider.

The undersigned can discern no evidence of a constitutional violation in this evidence. Plaintiff cannot simply rely on his own self-serving and conclusory claims and allegations, unsupported by any objective medical testimony or evidence, to avoid dismissal of this case. House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]; Scheckells v. Goord, 423 F.Supp. 2d 342, 348 (S.D.N.Y. 2006) (citing O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ["Lay people are not qualified to

---

[5]The Defendant South Carolina Department of Corrections is not subject to suit under § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 61-71 (1989); Coffin v. South Carolina Dep't of Social Servs., 562 F. Supp. 579, 583-585 (D.S.C. 1983); Belcher v. South Carolina Bd. of Corrections, 460 F. Supp. 805, 808-09 (D.S.C. 1978).

11



determine...medical fitness, whether physical or mental; that is what independent medical experts are for."]. Plaintiff is not a physician, and therefore his own conclusory and lay opinion about the type and quality of care he received is not competent evidence to establish a genuine question of fact as to whether the Defendant Alewine was deliberately indifferent to his serious medical needs. Papasan v. Allain, 478 U.S. 265, 286 (1986) [Courts need not assume the truth of legal conclusions couched as factual allegations]; Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) ["Even though pro se litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"]; see also Scheckells, 423 F.Supp. 2d at 348 (citing O'Connor, 426 F.3d at 202)); Green v. Senkowski, 100 Fed.Appx. 45 (2d Cir. 2004) (unpublished opinion) [finding that plaintiff's self-diagnosis without any medical evidence, and contrary to the medical evidence on record, insufficient to defeat summary judgment on deliberate indifference claim].

Plaintiff may, of course, pursue a claim in state court if he believes the medical care he has received has been inadequate. That is not, however, the standard here, which is a higher standard of deliberate indifference. Levy v. State of Ill. Dept. of Corrections, No. 96-4705, 1997 WL 112833 (N.D.Ill. March 11, 1997) ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"](quoting Farmer, 511 U.S. at 837); Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999)["Deliberate indifference is a very high standard - a showing of mere negligence will not meet it."]; A.P. ex rel. Bazerman v. Feaver, No. 04-15645, 2008 WL 3870697 at *12 (11th Cir. Aug. 21, 2008)["[D]eliberate indifference requires a much higher standard of fault than mere or even gross negligence . . . ."] The evidence before the Court is insufficient to raise a genuine issue of fact as to whether the Defendant Alewine was deliberately indifferent to Plaintiff's serious medical needs, and therefore Plaintiff's federal § 1983

12



medical claim is subject to dismissal. See DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200-203 (1989) [§ 1983 does not impose liability for violations of duties of care arising under state law]; Baker v. McClellan, 443 U.S. 137, 146 (1976) [§ 1983 claim does not lie for violation of state law duty of care]; Estelle, 429 U.S. at 106 ["medical malpractice does not become a constitutional violation merely because the victim is a prisoner."]; see also Brooks v. Celeste, 39 F.3d 125 (6th Cir. 1994); Sellers v. Henman, 41 F.3d 1100 (7th Cir. 1994); White v. Napoleon, 897 F.2d 103, 108-109 (3d Cir. 1990); Smart v. Villar, 547 F.2d 112 (10th Cir. 1976) [affirming summary dismissal].

## II.

## (§ 1983 Race Claim)

With respect to Plaintiff's general and conclusory claim in his complaint that the doctors and nurses who have been responding to his complaints have been discriminating against him because he is an African American, such a conclusory allegation, standing alone and without any supporting evidence, is not sufficient to present a viable claim or to withstand a properly supported summary judgment motion. *Cf.* Buford v. Sutten, No. 04-959, 2005 WL 756092 at * 3 (W.D.Wis. Mar. 29, 2005)["An individual seeking relief on a claim of race discrimination under the equal protection clause must allege facts suggesting that a person of a different race would have been treated more favorably."](citing Jaffe v. Barber, 689 F.2d 640, 643 (7th Cir. 1982)); Wilson v. Wigen, No. 96-0620, 1997 WL 158117 at * 3 (E.D.Pa. Mar. 31, 1997). See Chapman v. City of Detroit, 808 F.2d 459, 465 (6th Cir. 1986)["(Plaintiff's) conclusory allegations of...discrimination are not sufficient to establish liability."]; Jaffe v. Federal Reserve Bank of Chicago, 586 F.Supp. 106, 109 (N.D.Ill. 1984) [A plaintiff "cannot merely invoke his race in the course of the claim's narrative and automatically be entitled to pursue relief"]; May v. Baldwin, 895 F.Supp. 1398, 1410 (D.Or.

13



1995)["Though prison authorities may not discriminate against inmates on the basis of their race, plaintiff offers no evidence that he has been mistreated by prison officials because he is black."](internal citation omitted), aff'd, 109 F.3d 557 (9th Cir. 1997), cert. denied, 522 U.S. 921 (1997); see Papasan, 478 U.S. at 286; Morgan, 829 F.2d 10, 12.

Alewine attests that there has been no racial component to the quality of medical care Plaintiff has received, and Plaintiff has submitted no evidence to support this claim. Indeed (as already referenced), Plaintiff failed to even respond to the Defendants' motion for summary judgment. Therefore, this claim should be dismissed.

### III.

### (ADA Claim)

Plaintiff also makes numerous claims and allegations with respect to possible violations of Title II of the ADA. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Defendants did not dispute that Plaintiff is a "qualified individual with a disability", and that the Department of Corrections qualifies as a "public entity" for purposes of a suit for money damages. See United States v. Georgia, et al., 546 U.S. 151, 154 (2006) ["We have previously held that this term [public entity] includes state prisons"]. Rather, Defendants argue that Plaintiff has presented no evidence to show that he has been treated differently from any other inmate with the same medical conditions or that he has received improper medical care in violation of the ADA.

Plaintiff may only pursue his claims under Title II of the ADA to the extent that his allegations and evidence are also sufficient to create a genuine issue of fact as to whether his claims



constitute an independent violation of the Eighth Amendment, made applicable to the States by the Fourteenth Amendment. United States v. Georgia, et al., 544 U.S. 157-159.[6] As the undersigned has already found that no genuine issue of fact as to whether any constitutional violation has occurred has been presented in the evidence, Plaintiff's Title II ADA claim therefore also fails. This finding, of course, is not intended as a finding as to whether Title II ADA violations actually existed during the relevant time period, but only that under Wessel, as modified by United States v. Georgia, Plaintiff may not maintain such a claim against the State of South Carolina in this Court.[7]

**Conclusion**

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted**, and that this case be dismissed.

---

[6] In Wessel v. Glendening, 306 F.3d 203 (4th Cir. 2002), the Fourth Circuit ruled that Congress did not validly abrogate the sovereign immunity of the States when it enacted Part A of Title II of the ADA, and that an individual could not therefore sue a State under Title II. While United States v. Georgia overruled Wessel to the extent that a Title II ADA claim that also amounts to an independent constitutional violation *can* be pursued against a State, it did not overrule Wessel to any other extent, instead leaving that question to be decided by the lower courts. United States v. Georgia, 546 U.S. at 159. Therefore, to the extent Plaintiff's Title II claims do *not* amount to a constitutional violation, Wessel still controls in this Circuit. Spencer v. Earley, 278 Fed.Appx. 254, 257-259 (4th Cir. 2008); Chase v. Baskerville, 508 F.Supp.2d 492, 501-507 (E.D.Va. 2007), aff'd, 305 Fed.Appx. (4th Cir. 2008).

[7] This finding applies to the Defendant South Carolina Department of Corrections, since it is a state agency. Battle v. Eagleton, No. 07-1841, 2008 WL 2952349 at * 7 (D.S.C. July 28, 2008). As for Dr. Alewine, he cannot be sued under the ADA. Allen v. College of William & Mary, 245 F.Supp.2d 777, 787 (E.D.Va. 2003); Smith v. South Carolina Dep't of Corrections, No. 03-795, 2003 W 23851177 n. 1 (D.S.C. Aug. 11, 2003).



The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

October 6, 2009
Charleston, South Carolina

16



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

